ERNEST AMOS, COMPTROLLER, *et al., Appellants,* v. POS-. TAL TELEGRAPH-CABLE COMPANY, A CORPORATION, *Appellee.*

### Opinion Filed November 19, 1918.

1. When an appeal is taken from an interlocutory order or a decree overruling a demurrer to the Bill of Complaint, and not from a final decree, assignments of errors relating to other interlocutory decrees will not be considered.

2. Where the demurrer to a Bill of Complaint is addressed to the entire Bill of Complaint questioning the equities of the bill as a whole, it is a general demurrer, and, if, from the allegations properly pleaded, there is equity in the bill, it should stand.

3. Section 54, Chapter 6421, Laws of Florida, Acts of 1913, is not according to its wording, application and effect, a burden upon interstate business, when applied to persons, firms or corporations engaged in both intrastate and interstate business.

4. In computing the amount of license fee or occupational tax to be paid by the owner of a telegraph system, under the provisions of Section 54, Chapter 6421, Laws of Florida, Acts of 1913, the Comptroller should not include line mileage used by such owner *solely* for the transmission of interstate messages.

30—Vol. 76.

Appeal from Circuit Court for Duval County; D. A. Simmons, Judge.

Order affirmed.

*Van C. Swearingen,* Attorney General, for Appellants;

*Marks, Marks & Holt,* for Appellee.

CAMPBELL, Circuit Judge.—On January 23, 1917, the appellee, Postal Telegraph-Cable Company, as complainant in the court below, brought its bill of complaint against W. V. Knott, who had prior to January 2, 1917, been Comptroller of the State of Florida; Ernest Amos, who succeeded W. V. Knott as such Comptroller, and W. H. Dowling as Sheriff of Duval County, Florida, to restrain and enjoin the respondents in their respective official capacities from levying upon, advertising for sale and selling certain of its properties within the State of Florida, levied upon by said W. H. Dowling as such Sheriff of Duval County, Florida, under and by virtue of a certain warrant issued by the Comptroller of the State for the State license fee or occupational tax claimed against the complainant by virtue of Section 54, Chapter 6421, Laws of Florida, Acts of 1913; also to enjoin the further effort to collect the amount so claimed. It was further sought in said bill of complaint to have the law, the tax and the proceedings thereunder declared illegal, unconstitutional and void; also to have said Section 54, Chapter 6421, construed, if found valid, and the license fee so demanded of the complainant declared excessive, and the warrant of the Comptroller unauthorized, illegal and void.

The bill alleges in substance that the complainant, Postal Telegraph-Cable Company, a corporation, was organ

ized under the laws of the State of Delaware, and author-
ized to construct, operate and maintain telegraph lines
for the transmission of messages; that it had prior to the
filing of the bill accepted the provisions of the Act of
Congress, approved July 24, 1866, entitled "An Act to
Aid in the Construction of Telegraph Lines and to Se-
cure to the Government the use of the Same for Post,
Military and Other Purposes."

That it had entered the State of Florida in the year
1908 as a public service corporation, doing both intra-
state and interstate business in the transmission of tele-
graph messages, having constructed and maintained 36
offices, and 690 miles, actual pole mileage, of telegraph
lines in said State for the purpose of transacting said
business, alleging the total value of its property within
the State to be $45,162.00.

That of the pole mileage so used in its said business
in Florida 282.50 miles were owned exclusively by it;
247.50 miles owned by it and the Southern Bell Tele-
phone and Telegraph Company jointly, and 160 miles
leased from The Southern Bell Telephone and Telegraph
Company and other companies.

That it had in February, 1916, filed with the Comp-
troller of the State of Florida an authenticated state-
ment under oath, showing the value of its property, and
the extent of the mileage used by it in its said business.

That it applied to W. V. Knott, who was then Comp-
troller for a license, permitting it to transact its intra-
state business for the year beginning October 1st, 1916,
but that the Comptroller declined and refused to issue
and deliver to it the said license until it paid a license
fee or tax of $442.32 to the said Comptroller for the State
of Florida, the same being computed, as the bill alleges.
at 65 cents for each mile of the complainant's line, re-

gardless of whether the same was owned by it exclusively or jointly with the Southern Bell Telephone and Telegraph Company, or leased by it from other companies, and regardless of whether such mileage was used exclusively for interstate business or not.

That upon the complainant declining to pay such license fee, or tax demanded, W. V. Knott, who was then Comptroller, on November 27th, 1916, issued his warrant for the collection of said tax, and delivered the same to W. H. Dowling as Sheriff of Duval County, Florida, and instructed him to proceed to execute the same. That Ernest Amos, the respondent, as Comptroller, had adopted the acts and doings of his predecessor in having said warrant issued for the said tax, and that by virtue thereof, W. H. Dowling, Sheriff as aforesaid, had levied upon all the property of the complainant within the State of Florida, including all its offices, equipment, lines and franchises. That he had advertised the same to be sold on February 5th, 1917, and that notice of such sale was being published in "The Artisan," a newspaper published in Duval County, Florida. That the said respondent would proceed to sell same unless enjoined by the court.

The bill alleges that Section 54 of Chapter 6421, Laws of Florida, is invalid and void, setting forth various reasons for such allegations. It likewise alleges that for various reasons set forth specifically in the bill of complaint the license tax or fee so claimed and demanded as also the warrant for the collection thereof are unwarranted, illegal and void.

On the 1st day of February, 1917, a temporary restraining order was granted by the Judge of the Court. On the same day, February 1st, 1917, the Attorney General, representing the respondents, filed a demurrer to the bill of complaint. There are nine grounds of demurrer, all

of which are addressed to the entire bill, questioning, therefore, the sufficiency of the bill as a whole, to entitle the complainant to relief in equity, as prayed for therein.

On October 24, 1917, the court below made its order overruling the demurrer after having heard arguments of counsel for the respective parties. From this order the respondents have appealed.

There are four errors assigned upon which the appellant relies in this court for reversal.

The first two errors, however, cannot be considered by us, as they relate to the order granting the temporary injunction. This being an appeal from an interlocutory order; that is, the order overruling the demurrer to the bill of complaint, and not from a final decree, the order granting a temporary injunction cannot at this time be reviewed. McCall v. Lee, 66 Fla. 14, 62 South. Rep. 902; Camp Phosphate Co. v. Anderson, 48 Fla. 226, 37 South. Rep. 722.

We will consider the third and fourth assignments of error together; they each question the correctness of the order of the court below overruling the demurrer to the bill of complaint.

The demurrer we have seen is addressed to the bill of complaint as a whole. It is, therefore, a general demurrer, and if from the allegations properly pleaded there is any equity in the bill, it should stand. Key West Wharf & Coal Co. v. Porter, 63 Fla. 448, 58 South Rep. 599; Johnson v. McKinnon, 45 Fla. 388, 34 South. Rep. 272; Hull v. Burr, 58 Fla. 432, 50 South. Rep. 754.

In paragraph fourteen of the bill of complaint it is alleged "that said tax sought to be imposed and collected by the defendants from your orator is an illegal tax; that the warrant isued under and by virtue of Chapter 6421,

Laws of Florida, is illegal and void, and the proceedings taken by defendants under supposed authority of said law and said warrant for the purpose of realizing from your orator the said tax, are unwarranted and illegal, and should be restrained, enjoined and declared void and of no effect because said law, according to its wording and the application and effect of the same, burdens the interstate commerce business transacted and to be transacted by your orator between the State of Florida, and other States of the United States and foreign countries, and is an attempt to regulate such commerce in this, to-wit, that under the express provisions of said Section 54 of said Chapter 6421, your orator must pay an annual license tax computed at the rate of 65 cents per mile for every mile of telegraph line owned by your orator in any county, or, as the Comptroller has construed the act, owned or operated by your orator in any county of the said State; that your orator made return to the defendant, Knott, as Comptroller, showing the number of miles of telegraph lines owned and operated by it in the different counties of said State; that included in said return, your orator showed that in Duval County it operates 68 miles of telegraph line and that in the County of Nassau it operates 59 miles of telegraph line, and that in Baker County it operates 15 miles of telegraph line and all of said mileage was considered and included by the said Comptroller in estimating the amount of tax to be paid by your orator was taxed by said Comptroller at the rate of 65 cents per mile for every such mile in the counties aforesaid; that the said Comptroller arrived at the amount of the tax to be paid by your orator, to-wit, the sum mentioned in the warrant issued by him as afore-said, without reference to the nature of the telegraphic business transacted by your orator over any specific line

or lines; that in Nassau County aforesaid, your orator handles solely and entirely interstate business over 25 miles of its lines, and in Baker County aforesaid, your orator handles solely interstate business over 15 miles of its said lines, and in Duval County aforesaid your orator handles solely interstate business over 10 miles of its said lines; that the lines aforesaid do not carry any local wires or wires used for handling intrastate messages, but carry only wires used for handling interstate messages; that said lines are, therefore, instrumentalities for the handling of interstate commerce and not otherwise; that notwithstanding such facts, the said defendant, Knott, has included in the privilege tax imposed against your orator, and has included in the amount specified in said warrant, and is now endeavoring to collect from your orator a fee arrived at by including a charge at the rate of 65 cents per mile for each and every mile of the lines operated by your orator in Florida, including the aforesaid lines operated entirely and solely for the purpose of transmitting interstate messages, and in this behalf your orator charges that inasmuch as the tax sought to be collected from it is for the privilege of operating in Florida as a telegraph system, the State of Florida is not concerned with those portions of your orator's lines aforesaid, over which only interstate business is handled, yet notwithstanding such fact, the defendants have undertaken to estimate and have estimated and made a part of said fee demanded of your orator said charge of 65 cents per mile, per annum for each and every such mile of your orator's purely interstate commerce lines; that said tax is an attempt to regulate interstate commerce and casts a direct burden upon the interstate commerce handled by your orator over said lines, and is unconstitutional and void."

It will be seen from the foregoing paragraph that two propositions are raised; one assails Chapter 6421, Laws of Florida, upon the ground that it, in its wording, application and effect burdens the interstate commerce business of the complainant between the State of Florida and the other States of the United States and foreign countries, and all attempts to regulate such commerce, and, *second*, that the tax itself, as sought to be collected is an attempt to regulate interstate commerce, and casts a burden upon the interstate business handled by the complainant, in that the Comptroller without reference to the nature of the telegraphic business transacted by the complainant, included in estimating the tax sought to be collected, and in the amount specified in the warrant the charge of 65 cents per mile upon 50 miles of lines operated by the complainant in Duval, Nassau, and Baker Counties, over which only interstate messages were handled.

It appears from other allegations in the bill of complaint that the complainant is engaged in both intrastate and interstate business. Therefore the contention made in the above quoted paragraph that Section 54, Chapter 6421, Laws of Florida, in its wording, application and effect burdens the interstate commerce business of the complainant, and is an attempt to regulate it, is untenable. This court has held that a State statute imposing such a tax in general terms, on the doing of a specified kind of business or the pursuit of designated occupations in the State and requiring that a license therefor shall be taken out before any such business or avocation shall be done or engaged in, should not be construed as applying to any business of the kind that may constitute interstate commerce, but only to business that is domestic or State commerce and to persons engaged or intended to

engage in such domestic or State business. Osborne v. State, 33 Fla. 162, 14 South. Rep. 588; Ferguson v. McDonald, 66 Fla. 494, 63 South. Rep. 915. See also 17 R. C. L. 498, 499.

Section 54, Chapter 6421, Laws of Florida, Acts of 1913, is not, according to its wording, application and effect, a burden upon interstate business, when applied to persons, firms or corporations engaged in both intrastate and interstate business. However, as to that part of the quoted paragraph which alleges that the Comptroller, in estimating the amount of the license tax sought to be collected of the complainant included in such estimate a charge of 65 cents per mile on 50 miles of wire used solely and entirely for transacting the complainant's interstate business and included the same in his warrant for the collection thereof, *does* set up facts showing that the tax, to the extent of the estimate upon this 50 miles of interstate wire, is a burden upon such interstate commerce, and the instrumentalities used by the complainant solely in transacting its interstate business.

The demurrer admitting that facts properly pleaded in the bill are true, it admits that in the tax sought to be collected by virtue of the Comptroller's warrant, there is included a charge of sixty-five cents per mile upon wires used exclusively for interstate business, this entitled the complainant to relief.

In computing the amount of license fee or occupational tax to be paid by the owner of a telegraph system, under the provisions of Section 54, Chapter 6421, Laws of Florida, the Comptroller should not include line mileage used by such owner solely for the transmission of interstate messages. Brown v. Maryland, 12 Wheat. (U. S.) 419; LeLoup v. Port of Mobile, 127 U. S. 640; 8 Sup. Ct. Rep. 1380; Western Union Tel. Co. v. Texas, 105 U. S. 460;

Ratterman v. Western Union Tel Co., 127 U. S. 411, 32 L. Ed. 229, 8 Sup. Ct. Rep. 1127; Gray's Limitation on Taxing Power, Par. 900. The bill of complaint containing, therefore, equity sufficient to withstand a general demurrer addressed to the entire bill, the Chancellor correctly overruled the demurrer.

The order of the court below, overruling the demurrer, is affirmed.

BROWNE, C. J., AND TAYLOR, WHITFIELD AND ELLIS, J. J., concur.

WEST, J., disqualified.